(26 Misc. Rep. 405.)

### LYTTLE et al. v. PETTY, SOULARD & WALKER REALTY CO.

(Supreme Court, Appellate Term. February 24, 1899.)

CONVERSION—EVIDENCE—REVIEW.

  Plaintiff undertook plumbing work for L., who had surrendered the building to defendant, as mortgagee. L. was behind with his payments, and plaintiff refused to proceed until paid. Defendant advanced a check to L., who indorsed it to plaintiff, and he paid it to a manufacturer for bathtubs which were delivered to plaintiff, and placed by him in a room in such building, each being inclosed in a case. Plaintiff subsequently demanded the tubs, but his demand was refused. Defendant took them out of the cases, distributed them among the several rooms in the building for which they were intended, and had them affixed therein. *Held*, that there was a conversion.

Appeal from municipal court, borough of Manhattan, Second district.

Action by Samuel Lyttle and another against the Petty, Soulard & Walker Realty Company. There was a judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Daniel P. Mahony, for appellant.

Ennever & Trautmann, for respondents.

MacLEAN, J. By written stipulation, but two questions were litigated by the defendant, who brings this appeal in an action as for conversion: (1) As to the value of certain bathtubs, which question has been eliminated from consideration here; and (2) "whether or not the plaintiffs had parted with their title to the said bathtubs prior to the time of the alleged conversion thereof." From admissions, by stipulation, and from testimony, it appeared that the plaintiffs undertook to do the plumbing work in certain buildings owned by one Larsen, who had surrendered possession and control of the building to a mortgagee, the defendant company, by which latter the watchman and others on the premises were appointed, paid, and directed, so that it (the defendant) stood in the place of Larsen. Larsen being behind with his payments, the plaintiffs refused to proceed with their undertaking unless paid. Thereupon the defendant advanced to Larsen $300, by a check which he, at the same interview, indorsed and handed to the plaintiffs, who, the day following, paid it to the manufacturer by whom the bathtubs, on January 11th, were "delivered to the plaintiffs, * * * who received said bathtubs at the time and place above mentioned, and placed all of them in a store or room in the said building, said bathtubs and each of them being inclosed in certain cases or frames." Two days afterwards the plaintiffs demanded the tubs from

the watchman "in charge of the buildings and of the materials therein, including the bathtubs." The demand was refused, under previous instructions of the defendant. A few days later, a similar demand was made of the defendant. This, too, was refused, with a claim of right to hold and retain the tubs. About the same time, too, the tubs were taken out of the cases by the defendant, and distributed into the several rooms intended for bathrooms, and therein affixed.

Under this evidence, no question was made or to be made of the exercise by the defendant of dominion over the property, and of the exclusion of the plaintiffs from interference with it. It is to be presumed from the terms of the stipulation, as quoted above, and to be assumed from the judgment, that the plaintiffs bought the tubs on their own account, and not as agents, although the defendant's counsel argued otherwise, from a coincidence between the amounts advanced and the price of the tubs, and from certain testimony upon the trial. The agreement under which the "plumbing work" was to be done was not produced; but it is inferable from the facts proven, and from the judgment, that the bathtubs were to be furnished and put up by the plaintiffs, and that these particular tubs were intended so to be furnished and put up. Something more than this intention was necessary to make them the property of Larsen, for there was nothing indicating either delivery to Larsen, or Larsen's acceptance. By their such undertaking, the furnishers (for the word "undertakers," otherwise apt, has an infelicitous connotation) had to do something more before delivery of the property. They might have returned the tubs had they found them, on unpacking, not according to the terms of the order. Larsen, too, or those standing in his stead, might have refused, upon such inspection, to let them be put up, or, under most circumstances, have rejected them, even after they were put up, if not according to the bargain. The tubs therefore were and remained the property of the plaintiffs, with which the defendant had no right so to interfere.

Judgment should be affirmed, with costs.

FREEDMAN, P. J., concurs. LEVENTRITT, J., concurs in result.